McGrail *v.* McGrail.

JANE McGRAIL

*v.*

FRANCIS McGRAIL.

The testimony of a professional detective, in divorce cases, is to be subjected to close scrutiny, and received with great caution, but if corroborated by other witnesses or by circumstances, and it is consistent, and not grossly improbable, it should be accorded due weight.

On bill, answer, cross-bill, answer and proofs.

*Mr. Patrick H. Gilhooly,* for the complainant.

*Mr. Foster M. Voorhees,* for the defendant.

GREEN, V. C.

This bill was filed by the wife against her husband, under the twentieth section of the Divorce act, for support and maintenance, and an order for alimony *pendente lite* and counsel fee was made. The defendant, under an order, filed an answer to the bill, and with it a cross-bill charging his wife with adultery, committed with one Timothy Conlon, at a designated house in Elizabeth, on the 15th of March, 1890. There was an answer by the wife denying the adultery charged in the cross-bill. Testimony was taken before a master and examiner, and the cause argued on the evidence so taken.

If the husband's case is established, there is, of course, no reason to examine the evidence to sustain that of the wife. If the testimony given by the husband is to be believed, it is idle to question the guilt of the wife. She and the person named, according to his statement, were discovered under circumstances that leave no reasonable doubt of the commission of the offence. The husband is a police officer of Elizabeth. He had some years previously separated himself from his wife, leaving her in the possession of a house which he owned, and the rent of which he has allowed her to collect and use. Her conduct, while thus living in a state of separation, was so far from exemplary that her husband's attention was called to it by the priest and friends, and the unfavorable rumors regarding it are, in a measure, shown not to have been unjust by the testimony of Mrs. Marie Conlon, who resided in the house with her. McGrail's attention being thus called to the conduct of his wife, he determined to make an investigation. On the night in question he secured the services of two persons, Sherring and O'Laughlin, and visited his former home about ten o'clock in the evening, and, after waiting some time, made the discovery he describes. He is corroborated by the two friends who accompanied him; in all particulars by Sherring, and, as to the latter part of the transaction, by O'Laughlin. If the story told by these three is not true, they have entered into a conspiracy to destroy the good name of the wife, and her alleged paramour, by willful and deliberate perjury.

McGrail is, of course, an interested party, but there is no evidence to impeach his general character for truth and veracity. Sherring is a detective, and it is urged that his testimony is unreliable. It is true that the testimony of a professional detective is, in divorce cases, to be subjected to close scrutiny and received with great caution, but it is not to be unceremoniously thrown out. *Hurtzig* v. *Hurtzig, 17 Stew. Eq. 329 ; affirmed in 18 Stew. Eq. 869.* If corroborated by the testimony of other witnesses or by circumstances, and it is consistent, and not grossly improbable, it should be accorded due weight. One ground for suspicion of such testimony is, that it is to the pecuniary interest of the witness to create situations which will compromise the person he seeks to detect, and to bring about or create facts which he is employed to ascertain, and that his compensation is in a measure dependent on his success in these regards. These elements of distrust do not exist to any extent with reference to Sherring's testimony in this case. The situation presented itself, and his compensation, if any, was not dependent on success ;. he was called on to go more as a witness than as a detective.

O'Laughlin, the other witness, is a police officer of Elizabeth, who has no apparent interest in the controversy worthy of consideration, stands unimpeached, and no reason is given why entire reliance should not be placed on his testimony. It is true, he was not present when the other two men went into the room, but his evidence gives substantial corroboration to their account of the transaction.

It is urged by counsel for Mrs. McGrail that the story related is improbable.

The testimony as to the arrangement of the house is very unsatisfactory. As near as I can ascertain, the house stands some ten feet back from the street; there are three rooms on the first floor, called the front room, the middle room and the kitchen; there is a piazza and an entrance on the side, presumably into the middle room, and an entrance into the kitchen; a bay-window in the front room, five feet from the ground, faces the street; the side door is partly of glass and there is a window opening on the piazza. Some idea must be had of the arrange-

ment of the house to judge of one objection of improbability, and the above is the most satisfactory I can extract from the evidence. It is too indefinite to base any positive conclusions upon, but sufficient to dispose of one insistment on this head. O'Laughlin testifies that McGrail and Sherring went into the kitchen, while he watched the front door to prevent the escape of any one, and that he heard them break in the kitchen door. Counsel urges that it is incredible that these parties in the front room would have suffered themselves to be detected in the compromising situation sworn to, if McGrail made so much noise getting into the kitchen that O'Laughlin, watching the front door, could have heard him. But this depends entirely on the relative situation of the persons. If the door O'Laughlin watched was the entrance into the middle room, and the doors between that room and the front room, as well as the kitchen, were closed, and if O'Laughlin stood on the walk at the side of the house, it is altogether probable he could have heard a noise at the kitchen door which the persons in the front room did not hear, particularly as his attention was awake to the noise, and, if the story is true, theirs was not. This objection is effectually disposed of, however, by the fact that the testimony of both Mrs. McGrail and Conlon indicates that the first intimation they had of McGrail's visit was when he got into the room where they were, and that they did not hear him either getting into the kitchen or coming through the middle room.

It is next urged, that the story of these witnesses is improbable from the fact that the bed clothing was undisturbed. But the bed forms no part of the story as related, and it is altogether too speculative to disbelieve a statement as improbable on a surmise as to what means would probably be selected by the accused for the commission of a crime.

It is further said that the curtain of the front window was up, and that a person in the street could see into the room. But it is one of the uncontradicted parts of the husband's story that these parties were in the dark when surprised by the entrance of McGrail and Sherring. The visitor, Mrs. Berry, speaks of a light when she was there. Conlon speaks of Mrs. McGrail lighting her visitor out. Yet, a very few minutes after they are

in the room with the door closed, and it was so dark that the husband and his witness made their discovery by lighting matches, until the lamp was found burning so dimly that it did not even disclose its whereabouts. Neither Mrs. McGrail nor Conlon deny it was dark in the room, nor that McGrail and Sherring lighted matches in order to see. This destroys all the point of the argument, that it was improbable these parties would be guilty of the acts charged, with the window curtain in the condition it was.

Comment is made on the discrepancy of the witnesses as to time. Sherring says he, just after reaching there, heard a clock strike ten, and that it was half-past ten by McGrail's watch after the trouble was all over. This is the only testimony which pretends to be accurate ; the other is simply the opinion of the witnesses. Nothing is more uncertain and unreliable than the testimony of witnesses as to the time occupied in a transaction. There are situations when moments seem hours and others when time flies imperceptibly, and witnesses should not be discredited because of a difference of opinion or judgment on such a point.

There is not, in my opinion, sufficient substance in the above objections urged to cast reasonable doubt upon the testimony produced by the husband.

The wife and Conlon both deny their guilt. The testimony of the wife is competent, but when it is uncorroborated by any evidence, save that of the alleged paramour, it cannot be relied on to break down an otherwise established case.

It was, of course, necessary for her to explain facts which would not admit of contradiction.

Why should she, a married woman, living separate from her husband, harbor a man at that time of night in her bed-room ? Mrs. McGrail's excuse for the presence of Conlon that night in her house is, that he came there to fix a stove, and that he remained there until she could replenish the fire, when she was going to take him home. She says after letting Conlon in and her visitor, Mrs. Berry, out, she told Conlon to sit down until she put some coal on the stove and she would then go home with him ; that she went to the kitchen, got some coal and brought it into the front room ; had part of the stove open, but had not

McGrail v. McGrail.

put any coal on the fire, when her husband rushed into the room and attacked Conlon.

Does her story satisfactorily explain suspicious facts? Is it probable and is it corroborated?

She says she did not expect Conlon, and he does not pretend he went that evening by appointment, but both agree that he had been there previously to fix the stove and was not able to do so because there was a fire in it. It clearly appears that the night in question was cold; there is some discrepancy in the testimony as to whether it was raining or not, but there can be no dispute but that it was such a night when it was altogether probable there would have been a fire in the stove; it is in the last degree suspicious that this man went to the house of a married woman, living separate from her husband, at ten o'clock on a cold night, in March, to fix a stove he knew could not be fixed if there was a fire in it.

But why ask him to remain? Her excuse is, his intoxicated condition.

Evidence shows, I think, he was under the influence of liquor, but it is questionable if to the degree Mrs. McGrail contends for, which would indicate helplessness and probable incapacity; he was sober enough to find the house, come there alone, go to the right entrance and speak about fixing the stove. He certainly might have been trusted to go a few steps further to his own home. He is shown to have been intoxicated at six o'clock in the evening, but it was near ten when he reached Mrs. McGrail's, and the doctor says when he saw him he was not drunk. The beating McGrail gave him might have had the effect of sobering him, but I do not believe from the evidence that Conlon was either stupified or helpless when he went to the house, and I think he correctly describes his condition when he says he was " betwixt and between." His memory is good as to what transpired. He remembers going to the house; the fact that Mrs. McGrail admitted him; that there was a lady visitor there whom Mrs. McGrail lighted to the door; that he spoke of fixing the stove, and the particulars of McGrail's attack on him,

McGrail *v.* McGrail.

the pistol and what was said. There is no apparent lapse of memory.

How far is Mrs. McGrail corroborated? She says Mrs. Berry was at her house from five o'clock until near ten. Mrs. Berry says she did not go there until between nine and ten o'clock. Conlon swears he heard and saw nothing about getting any coal to put on the fire; that the only thing that was done after Mrs. Berry left was his arranging to come there on Monday to fix the stove.

There is the widest discrepancy in the testimony as to where the lamp was; one says it was in one place and others in another, but all agree that it was dark in the room in which the parties were found. This is sought to be accounted for by the fact that the oil in the lamp was low. But why not light another? This lamp was burning when Mrs. Berry was there; Conlon says Mrs. McGrail used it to light her out; she went out, it is presumed, of the middle room door. Why was the lamp left in that room, or, if in the other, why was it burning so dimly, and why was the door between the two rooms closed, after bringing the coal in (if it was brought in), as the parties must pass through it to go out after the coal was put in the stove?

It is a significant fact that after McGrail had cruelly beaten Conlon over the head with the butt end of his revolver, and the latter, cut and bleeding, got into his house with the assistance of Mrs. McGrail and some other person, that no mention was made of the true cause of his injury. He told Mrs. Dingham that he slipped or fell down, and in some way or other evaded Dr. Donovan's inquiry as to how he got the blow, although he says he told him he was struck, and that McGrail's name was mentioned:

I am constrained by the evidence to find that the complainant is guilty of the charge made in the cross-bill, and advise a decree in favor of the husband.